UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Rita Grenier and Edwin Grenier, Individually
and on Behalf of All Others Similarly Situated

    v.                                               Civil No. 21-cv-00534-LM
                                                        Opinion No. 2021 DNH 172 P

Granite State Credit Union,
Does 1 through 5

**O R D E R**

      Plaintiffs Rita and Edwin Grenier bring this putative class action against Granite State Credit Union ("Granite") and "Does 1 through 5," alleging injuries stemming from Granite's overdraft fees and policies. Plaintiffs allege that—by not properly informing consumers how overdrafts are assessed—Granite has violated, and continues to violate, the Electronic Funds Transfer Act's, 15 U.S.C. § 1693 ("EFTA"), implementing regulations, 12 C.F.R. § 1005 et seq. ("Regulation E").

      Pending before the court is Granite's motion to dismiss (doc. no. 9) under Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion is denied.

**STANDARD OF REVIEW**

      Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

Regulators, private litigants, and the courts have recently devoted significant attention to overdraft fees. See Chambers v. NASA Fed. Credit Union, 222 F. Supp. 3d 1, 5-7 (D.D.C. 2016) (thoroughly outlining history). In 2009, the Federal Reserve Board[1] revised Regulation E to add a provision intended to "assist consumers in understanding how overdraft services provided by their institutions operate and to ensure that consumers have the opportunity to limit the overdraft costs associated with ATM and one-time debit card transactions where such services do not meet their needs." Electronic Fund Transfers, Final Rule, 74 Fed. Reg. 59,033, 59,033 (Nov. 17, 2009).

Thus, Regulation E now requires financial institutions to obtain a customer's "affirmative consent" before charging overdraft fees on ATM or one-time debit card transactions. 12 C.F.R. § 1005.17(b)(1)(iii). To secure consent, institutions must use an opt-in notice that "describe[s] the institution's overdraft service." Id. at 1005.17(b)(1)(i). The notice must be "segregated from all other information," and "substantially similar" to a model form (Model Form A-9) provided by the Consumer

---

[1] Congress reassigned responsibility for enforcing the EFTA from the Federal Reserve Board to the Consumer Financial Protection Bureau in 2010. See Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title X, § 1084, 124 Stat. 1376, 2081–83.

2

Financial Protection Bureau.  Id. at 1005.17(b)(1)(i); (d).  All disclosures must be "clear and readily understandable."  12 C.F.R. § 1005.4(a)(1).

Issues occur when a disclosure does not adequately convey how overdraft fees are assessed.  There are two balances financial institutions can use to calculate whether the amount of money in an account dips below zero:  either the "actual balance"[2] or the "available balance."  The "actual balance" is the actual amount of money in an accountholder's account at any particular time.  The "available balance," in contrast, is the actual amount of money in the account minus any "holds" on deposits and pending debits that have not yet been posted.  For this reason, calculating overdrafts based on the available balance "often leads to more frequent overdrafts because there is less money available in the account due to holds and pending transactions."  Domann v. Summit Credit Union, No. 18-cv-1670-slc, 2018 WL 4374076 (W.D. Wis. Sept. 13, 2018) (citation omitted).

Thus, plaintiffs across America have filed a number of "virtually identical lawsuits" challenging institutions that use the available balance method where the opt-in notice does not explain how it assesses overdraft fees.  Id.; see, e.g., Tims v. LGE Cmty. Credit Union, 935 F.3d 1228, 1239-40 (11th Cir. 2019); Adams v. Liberty Bank, No. 3:20-cv-01601(MPS), 2021 WL 3726007 (D. Conn. Aug. 23, 2021); Wellington v. Empower Fed. Credit Union, -- F. Supp. 3d. --, 2021 WL 1377789 (N.D.N.Y. Apr. 13, 2021); Bettencourt v. Jeanne D'Arc Credit Union, 370 F. Supp.

---

[2] Courts also refer to "actual balance" as the "ledger balance" or "current balance."

3d 258 (D. Mass. 2019); Walbridge v. Northeast Credit Union, 299 F. Supp. 3d 338 (D.N.H. 2018); Walker v. People's United Bank, 305 F. Supp. 3d 365 (D. Conn. 2018); Salls v Digital Fed. Credit Union, 349 F. Supp. 3d 81 (D. Mass. 2018); Domann, 2018 WL 4374076; Ramirez v. Baxter Credit Union, No. 16-CV-03765-SI, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017); Pinkston-Poling v. Advia Credit Union, 227 F. Supp. 3d 848 (W.D. Mich. 2016); Chambers, 222 F. Supp. 1.

Plaintiffs in this case bring one such lawsuit.  They allege that Granite used a one-page notice entitled "What You Need to Know about Overdrafts and Overdraft Fees" (the "Opt-in Disclosure").  The Opt-in Disclosure states that an overdraft "occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway."  It does not outline the distinction between the actual balance method and the available balance method.  Thus, Plaintiffs allege that Granite has violated, and continues to violate, Regulation E because the phrase "enough money" does not specify whether Granite calculates overdrafts based on the actual balance or the available balance.  Essentially, they argue that the Opt-in Disclosure does not provide a "clear and readily understandable" explanation of "the institution's overdraft service."  See 12 C.F.R. § 1005.4(1)(1); 1005.17(b)(1)(i).

## DISCUSSION

Granite moves to dismiss on the grounds that, first, it did not violate Regulation E and, second, that the EFTA's safe harbor provision, 15 U.S.C. § 1693m(d)(2), insulates it from liability.

4

I.      Regulation E Violation

Granite first argues that when the Opt-in Disclosure is read in conjunction with a document entitled "Terms and Conditions of Your Account" (the "Membership Agreement"), Granite satisfies Regulation E's disclosure requirements. Granite attaches the five-page Membership Agreement to its motion, and alleges it is the operative agreement governing Plaintiffs' relationship with Granite. The Membership Agreement states that Granite assesses overdrafts based on the available balance:

> **Determining your available balance** – We use the "available balance" method to determine whether your account is overdrawn, that is, whether there is enough money in your account to pay for a transaction. Importantly, your "available" balance may not be the same as your account's "actual" balance. This means an overdraft or an NSF [nonsufficient funds] transaction could occur regardless of your account's actual balance.

Doc. no. 9-3 at 1. It then proceeds to describe in further detail the difference between actual balance and available balance. See id. The Membership Agreement was not attached to—or referenced in—the complaint.[3]

Even assuming that the Membership Agreement could be considered at the motion to dismiss stage, Plaintiffs have still plausibly alleged violations of Regulation E. Regulation E requires financial institutions to provide disclosures about their overdraft policies "segregated from all other information," i.e. in a

---

[3] Granite alleges that Plaintiffs referred to the Membership Agreement in their complaint when they referenced a "Granite agreement." Doc. no. 9 at 2 n.1. As Plaintiffs clarify, the "Granite agreement" referenced in the complaint is actually the Opt-in Disclosure. Doc. no. at 11 n.4.

5

standalone document. 12 C.F.R. § 1005.17(b)(1)(i). Because Plaintiffs allege that the Opt-in Disclosure is the segregated document, only it is relevant to Plaintiffs' claim. The Membership Agreement is extraneous information, irrelevant to whether the Opt-in Disclosure itself—i.e., the segregated document—adequately explains Granite's overdraft policy. See Adams, 2021 WL 3726007, at *4 (refusing to consider extraneous documents such as an Account Agreement on Rule 12(b)(6) motion, but holding that even if it could consider those documents, they would not make plaintiff's Regulation E claim any less plausible because Regulation E requires notice to be "segregated from all other information"); see also Wellington, 2021 WL 1377789, at *4 (holding that even assuming extraneous evidence should be considered on a Rule 12(b)(6) motion, the plaintiff still plausibly alleged violations of Regulation E).

      The cases Granite cites in support of its argument that the Opt-in Disclosure and the Membership Agreement should be read together are not persuasive. Those cases are all in the context of contract claims, for which it may be appropriate to construe multiple documents together. See, e.g., Tims, 935 F.3d at 1238 n.5 (citing state contract law for the proposition that "where multiple documents are executed at the same time in the course of a single transaction, they should be construed together"); Domann, 2018 WL 3474076, at *6-7; Chambers, 222 F. Supp. 3d at 11-12. Yet in cases where plaintiffs allege both a contract claim and a Regulation E claim, courts will read the documents together for the contract claim only, because Regulation E requires notice to be "segregated." See Ramirez, 2017 WL 118859, at

6

*8. Thus, Tims, Domann, and Chambers do not help Granite's argument because here Plaintiffs do not allege breach of contract, and in fact specifically disavow any such claim. See doc. no. 11 at 10.

Looking only at the Opt-in Disclosure, then, Plaintiffs plausibly state a claim that the phrase "enough money" does not adequately provide a "clear and readily understandable" explanation of "the institution's overdraft service." 12 C.F.R. § 1005.4(1)(1); 1005.17(b)(1)(i). Countless courts examining virtually identical language have agreed. See, e.g., Tims, 935 F.3d at 1238 (ambiguous whether disclosure that overdraft occurs "when you do not have enough money in your account to cover a transaction, but we pay it anyway" uses actual balance or available balance method); Wellington, 2021 WL 1377789, at *5; Bettencourt, 370 F. Supp. 3d at 262, 265; Walbridge, 299 F. Supp. 3d at 343; Salls, 349 F. Supp. 3d at 90; Pinkston-Poling, 227 F. Supp. 3d at 857; Walker, 305 F. Supp. 3d at 376. Thus, Plaintiffs plausibly state a claim that Granite's Opt-in Disclosure violates Regulation E.

II.   Safe Harbor Provision

Granite next argues that the EFTA's safe harbor provision insulates it from liability. The EFTA protects financial institutions from liability for "any failure to make disclosure in proper form if a financial institution utilized an appropriate model clause issued by the Bureau or the Board." 15 U.S.C. § 1693m(d)(2). Regulation E requires that notice "shall be substantially similar to Model Form A-9," which is promulgated by the Consumer Financial Protection Bureau. 12 C.F.R.

7

§ 1005.17(d). Model Form A-9 states: "An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." §1005, App. A (emphasis in original).

Courts across the country have addressed arguments identical to Granite's argument here, and the vast majority have held that that using language identical to that in Model Form A-9 does not necessarily insulate a financial institution from liability. See Tims, 935 F.3d at 1244; Adams, 2021 WL 3726007, at *6-*8; Bettencourt, 370 F. Supp. 3d at 266; Salls, 349 F. Supp. 3d at 90-91; Walbridge, 299 F. Supp. 3d at 349; Smith, 2017 WL 3597522, at *8; Gunter v. United Fed. Credit Union, No. 3:15-cv-00483-MMD-WGC, 2017 WL 4274196, at *3 (D. Nev. Sept. 25, 2017); Ramirez, 2017 WL 118859, at *7; Pinkston-Poling, 227 F. Supp. 3d at 852. As one court reasoned, the safe harbor provision requires the use of an "appropriate model clause." Adams, 2021 WL 3726007, at *7 (citing 15 U.S.C. § 1693m(d)(2)). If the language in Model Form A-9 does not accurately describe a particular institution's overdraft service, then it is not "appropriate." Id. Indeed, "[i]f use of a model clause were, by itself, an impenetrable shield, a consumer would have no redress" when Model Form A-9 does not actually provide a "clear and readily understandable" description, 12 C.F.R. § 1005.5, of an institution's overdraft services. Id.

Granite cites two unreported district court cases holding otherwise. See Rader v. Sandia Lab. Fed. Credit Union, No.20-559 JAP/JHR, 2021 WL 1533664, at *13-*14 (D.N.M. April 19, 2021); Tilley v. Mountain Am. Fed. Credit Union, No.

8

2:17-cv-01120-JNP-BCW, 2018 WL 4600655, at *4-*6 (D. Utah Sept. 25, 2018). The court does not find the reasoning of these cases to be persuasive. Tilley, for example, cited a Northern District of Georgia case for the proposition the phrase "enough money" from the model form is not inaccurate when the financial institution calculates overdrafts based on an account's available balance. Tilley, 2018 WL 4600655, at *5 (citing Tims v. LGE Cmty. Credit Union, No. 1:15-cv-4279-TWT, 2017 WL 5133230, at *6 (N.D. Ga. Nov 6, 2017), rev'd and remanded by 934 F.3d 1228). But the Eleventh Circuit later overturned that case on appeal, holding that using language from a model clause "does not shield [a financial institution] for claims based on their failure to make adequate disclosures." Tims, 935 F.3d at 1243. The other case Granite cited, Rader, relied exclusively on Tilley's reasoning, without acknowledging that Tilley was predicated in part on reasoning that the Eleventh Circuit had overturned. See 2021 WL 1533664, at *13-*14. Rather than following either of these cases, this court agrees with the sound reasoning of the Eleventh Circuit and the previously cited district court cases holding that the safe harbor provision did not defeat plaintiffs' claims.

Thus, Plaintiffs have plausibly stated a claim that the clause from Model Form A-9 was not "appropriate" because the language did not describe Granite's overdraft policy in a "clear and readily understandable" way. See Adams, 2021 WL 3726007, at *8.

## CONCLUSION

For these reasons, Granite's motion to dismiss (doc. no. 9) for failure to state a claim is <u>denied</u>.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 8, 2021

cc: Counsel of Record