## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Rita Grenier and Edwin Grenier, Individually
and on Behalf of All Others Similarly Situated

       v.                                    Civil No. 21-cv-534-LM
                                               Opinion No. 2023 DNH 090 P

Granite State Credit Union,
Does 1 through 5

## O R D E R

Plaintiffs Rita and Edwin Grenier bring this putative class action against Granite State Credit Union ("Granite") and "Does 1 through 5," alleging injuries arising from Granite's overdraft fees and policies.  Plaintiffs argue that Granite's overdraft policies—specifically, Granite's failure to adequately explain to consumers how it assesses overdrafts—violate the Electronic Funds Transfer Act's, 15 U.S.C. § 1693 ("EFTA"), implementing regulations, 12 C.F.R. § 1005 et seq. ("Regulation E").

Granite filed a motion to dismiss (doc. no. 9) which the court denied (doc. no. 20).  The parties now report that they have reached a negotiated settlement of their dispute.  Before the court is plaintiffs' unopposed motion (doc. no. 40) for preliminary approval of the parties' settlement.  The court has carefully reviewed the parties' proposed Class Action Settlement Agreement (the "Agreement") and its supporting exhibits.  For the following reasons, the court: (1) preliminarily approves the Agreement; (2) preliminarily certifies the proposed class for settlement purposes; (3) appoints KCC LLC to administer the settlement and provisionally

appoints plaintiffs' counsel of record as settlement class counsel and plaintiffs as settlement class representatives; (4) approves the opt-out and objection procedures outlined by the parties, subject to one change; and (5) directs the parties to submit updated proposed notice forms to bring them into conformity with Fed. R. Civ. P. 23(c)(2)(B). The court declines to set a schedule for the fairness hearing and related deadlines until the notices are approved.

## BACKGROUND

Regulation E requires financial institutions to secure "affirmative consent" from customers before assessing overdraft fees on customers' ATM and one-time debit card transactions. 12 C.F.R. § 1005.17(b)(1)(iii). It requires institutions to obtain such consent utilizing an opt-in notice that "describe[s] the institution's overdraft service," id. § 1005.17(b)(1)(i), in a way that is "clear and readily understandable," id. § 1005.4(a)(1).

Plaintiffs allege that Granite violated Regulation E by charging them overdraft fees without adequately explaining how Granite determines what constitutes an overdraft. Granite's opt-in notice (the "Opt-in Disclosure") states that an overdraft "occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." It does not disclose how it determines whether an account has "enough money."

There are two different methods by which financial institutions can calculate an account's balance to determine whether it has "enough money" to cover a transaction at any given time. One such method, referred to as the "available

balance," is calculated by subtracting from the amount of money in the account any "holds" on deposits and pending debits that have not yet posted. The other method, known as the "actual balance," is the actual amount of money in the account at any particular time, irrespective of any holds. Calculating overdrafts based on the available balance tends to result in more frequent overdrafts. Tims v. LGE Cmty. Credit Union, No. 1:15-CV-4279-TWT, 2017 WL 5133230, at *1 (N.D. Ga. Nov. 6, 2017), rev'd and remanded, 935 F.3d 1228 (11th Cir. 2019).

Granite uses the available balance method. Granite's failure to inform accountholders of the difference between the two methods of calculating overdrafts, and of which method Granite employs, forms the basis of this suit.

After the court denied Granite's motion to dismiss (doc. no. 20), the parties engaged in discovery. Plaintiffs served document requests and interrogatories on Granite, and Granite provided written responses, including transactional data. Both parties conducted depositions, and plaintiffs' data expert completed an extensive analysis of the transactional data provided by Granite.

Based on the data, plaintiffs' data expert concluded that between June 22, 2020, and April 30, 2022,[1] Granite assessed 35,053 overdraft fees on 1,229 customers for transactions that constituted overdrafts under the available balance calculation, but not under the actual balance calculation. Those fees totaled $1,051,410. The expert extrapolated those results to estimate the fees assessed

---

[1] The court understands this to be the period covered in the transactional data provided by Granite during discovery.

through March 28, 2023[2].  In total, the expert estimated that Granite assessed $1,587,963 in fees between June 22, 2020, and March 28, 2023.

## DISCUSSION

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  Courts approve class action settlements in stages.  See Rapuano v. Trs. of Dartmouth Coll., 334 F.R.D. 637, 642 (D.N.H. Jan. 29, 2020); see also 4 William B. Rubenstein, Newberg on Class Actions § 13.10 (6th ed. 2022).

First, the court must preliminarily approve the proposed settlement.  To do so, it must find that it "will likely be able to" (1) certify the class for settlement purposes and (2) approve the settlement proposal under Rule 23(e)(2).  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(1)(B) requires courts to conduct a "searching," "careful," and "rigorous" inquiry before preliminarily approving a settlement.[3]  Id.; see also Wright v. S. New Hampshire Univ., 565 F. Supp. 3d 193, 200 (D.N.H. 2021).  If the

---

[2] The court presumes, though the plaintiffs did not so specify, that March 28, 2023, marks the end of the "Class Period," which the Agreement defines as "the period from June 21, 2020, to the date on which the Class List is completed."

[3] Congress amended Rule 23(e) in 2018 to include a specific standard and process for granting preliminary approval of a settlement.  See Rapuano, 334 F.R.D. at 643.  Prior to the amendment, in the absence of formal guidance, courts took a more "lax" approach when determining whether to grant preliminary approval of a settlement.  Id.  This court previously considered the impact of the 2018 amendment in Rapuano and concluded that Rule 23(e) requires the court to conduct a "searching," "careful," and "rigorous" inquiry.  Id.; see also Wright, 565 F. Supp. 3d at 200.

court grants preliminary approval, it then must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  After notice to the class, the court must hold a fairness hearing at which class members may appear to support or object to the proposed settlement.  See Rubenstein, supra, § 13.10.  Finally, the court must determine whether to grant final approval of the proposed settlement.  See id.  Under Rule 23(e)(2), the court may grant final approval of a class action settlement if it can certify the proposed class, see Amchem Products, Inc. v. Windsor, 521 U.S. 591, 621 (1997), and finds that the proposed agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

This case is at the preliminary approval stage.  The First Circuit has recognized the importance of encouraging and facilitating class action settlements where appropriate under Rule 23(e).  Howe v. Townsend, 588 F.3d 24, 36 (1st Cir. 2009) (citing Durrett v. Hous. Auth., 896 F.2d 600, 604 (1st Cir. 1990)). Nonetheless, the court's determination at this stage is "preliminary in the sense that it is subject to modification based on additional information—including further factual development or objections by class members—that may come to light prior to or during the fairness hearing."  Rapuano, 334 F.R.D. at 643 (citations omitted).

I.    Preliminary Certification of the Proposed Class for Settlement Purposes

To certify a class, the court must find that the class meets the four requirements of Rule 23(a) and that the action falls into one of the categories outlined in Rule 23(b).  See Amchem, 521 U.S. at 613-14.

Here, plaintiffs seek preliminary certification of the settlement class for purposes of settlement.  The settlement class is defined as "all current and former members of Defendant with consumer accounts, who were charged [an overdraft fee] during the Class Period."   The class excludes "Granite State Credit Union, its parents, subsidiaries, affiliates, officers, and directors; DOES 1 through 5; all Settlement Class members who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members."  All eligible impacted individuals will be included in the settlement unless they opt out.

A.   Fed. R. Civ. P. 23(a)

Rule 23(a) has four requirements: numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a).

1.   Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Clough v. Revenue Frontier, LLC, No. 17-CV-411-PB, 2019 WL 2527300, at *3 (D.N.H. June 19, 2019) (quoting Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009)).  Here, the record establishes that the settlement class includes at least 1,229 members.  Because joinder of 1,229 members is impracticable, numerosity is likely satisfied.

### 2.   Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To establish commonality, a plaintiff must show that all putative class members "have suffered the same injury."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (citation, internal quotation marks omitted).  This means that the putative class members' "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  Commonality is a "low bar."  In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 19 (1st Cir. 2008).

In this case, all class members allege the same injury, which is that they were charged overdraft fees in violation of Regulation E.  Resolution of each class member's allegation depends on whether Granite's Opt-in Disclosure provides a "clear and readily understandable" explanation of "the institution's overdraft service."  See 12 C.F.R. § 1005.4(1)(1); 1005.17(b)(1)(i).  Plaintiffs likely clear the "low bar" of commonality.

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The rationale behind this requirement is that "a class representative will adequately pursue her own claims, and if those claims are 'typical' of those of the rest of the class, then her pursuit of her own interest will necessarily benefit the

class as well." Rubenstein, supra, § 3.28.  To be typical, the representative plaintiffs' claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." Garcia-Rubiera, 570 F.3d at 460.  The claims need not be identical, they need only "share the same essential characteristics." Rapuano, 334 F.R.D. at 648 (quoting Ouadani v. Dynamex Operations E., LLC, 405 F. Supp. 3d 149, 162 (D. Mass. 2019)).

Here, the representative plaintiffs' claims share the same essential characteristics as the claims of the putative class.  All plaintiffs allege that they were charged overdraft fees without fair disclosure of how overdrafts are assessed. All plaintiffs were also all subject to the exact same Opt-in Disclosure.  The representative plaintiffs would prevail by showing that the language of the Opt-in Disclosure violated Regulation E.  Because the same is true for the putative class, the parties' interests align, and thus, typicality is likely satisfied.

    4. <u>Adequacy</u>

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  To make such a showing, the petitioner must demonstrate that (1) "the interests of the representative party will not conflict with the interests of any of the class members," and (2) "counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Regarding the first prong, the court has not identified any way in which the class representatives' interests conflict with the interests of any class members. To the contrary, the parties' interests appear aligned. With respect to the second prong, the court is persuaded that McCune Law Group, McCune Wright Arevalo Vercoski Kusel Weck Brandt, APC ("McCune") and Shaheen & Gordon, P.A., are qualified to conduct this litigation. The record indicates that McCune has been class counsel or co-lead counsel in 25 other overdraft fee class actions. Doc. no. 40-2. Thus, counsel is qualified and experienced. Further, counsel has demonstrated its ability to "vigorously conduct the proposed litigation" through its performance in this litigation thus far. See Andrews, 780 F.2d at 130. The adequacy requirements of Rule 23(a)(4) are therefore likely satisfied.

B.  Fed. Rule Civ. P. 23(b)

Plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) requires the party seeking certification to show that common questions of law or fact "predominate over any questions affecting only individual members" and that class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see also Amchem, 521 U.S. at 615. Certification under Rule 23(b)(3) is often appropriate in cases involving money damages where individual plaintiffs' recoveries would be too small to justify the cost of litigating the claims individually. Rubenstein, supra, § 4:47 (citing Amchem, 521 U.S. at 617). Class actions provide an avenue for recovery under such

circumstances by "aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."  Id.

Rule 23(b)(3) sets forth a non-exhaustive list of factors the court should consider in making its "predominance" and "superiority" assessments:

- the class members' interests in individually controlling the prosecution or defense of separate actions;

- the extent and nature of any litigation concerning the controversy already begun by or against class members;

- the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

- the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Because the court is considering certification for the purposes of settlement only, it need not consider the fourth factor: whether a class action would be manageable.  Amchem, 521 U.S. at 620.  However, "other specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context."  Id.

1.   Predominance

The predominance inquiry requires the court to examine "the relation between common and individual questions in a case."  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016).  A question is common if "the same evidence will suffice for each member to make a prima facie showing or [if] the issue is susceptible to generalized, class-wide proof."  Id. (citation, internal quotation marks, and brackets omitted).  A question is individual if it requires "members of a proposed class . . . to present evidence that varies from member to member."  Id.

(citation and internal quotation marks omitted).  "Common questions do not predominate if 'a great deal of individualized proof' would need to be introduced or 'a number of individualized legal points' would need to be established after common questions were resolved."  Rubenstein, supra, § 4:50 (citations omitted).

While this requirement is similar to Rule 23(a)'s commonality requirement, it is "far more demanding," because it requires courts to find not only that common questions exist, but also that they predominate over individual ones.  See Amchem, 521 U.S. at 624.  "When one or more of the central issues in the action are common to the class and can be said to predominate," the action may be certified under Rule 23(b)(3), even though other important matters, such as damages, may require individual determination.  Tyson Foods, 577 U.S. at 453 (citation and internal quotation marks omitted).

Here, predominance is likely satisfied.  To prevail on the claim that Granite violated Regulation E, plaintiffs need to show that Granite's Opt-in Disclosure was insufficient to explain when Granite assesses overdraft fees.  There is no dispute that all of the plaintiffs were subject to the same Opt-in Disclosure.  There is similarly no dispute that Granite calculated overdrafts using customers' available balance rather than their actual balance.  Any differences between the class members' claims are either immaterial to the resolution of the matter or outweighed by questions common to all members.

2.  Superiority

Under Rule 23(b)(3), the court must next consider whether class action is a "superior" method of resolving class members' dispute with the defendant, taking

11

into account the several factors outlined above. Fed. R. Civ. P. 23(b)(3). The superiority requirement "ensures that litigation by class action will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." In re Solodyn (Minocycline Hydrochloride) Antitrust Litig., Case No. CV 14-MD-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (citation, internal quotation marks, and ellipsis omitted).

The superiority requirement is likely satisfied. This is a case where "paltry" potential individual recoveries could make separate actions impractical if not impossible. See Amchem, 521 U.S. at 617. Class members are thus likely to benefit by aggregating their claims. See id. Additionally, in light of the issues common to all class members discussed above, the proposed classwide settlement would achieve an efficient resolution of the class members' claims while avoiding unnecessary and duplicative litigation for all parties and the judicial system. See Rapuano, 334 F.R.D. at 653.

In sum, the court finds that it will likely be able to certify the proposed class for the purposes of settlement. See Fed. R. Civ. P. 23(e)(1)(B)(ii).

C.    Appointment of Class Counsel Under Rule 23(g)

When a court certifies a class, it must appoint class counsel. Fed. R. Civ. P. 23(g). The court considers the work plaintiff's chosen counsel has done so far in identifying and investigating class claims, counsel's class action and complex litigation experience, counsel's knowledge of the applicable law, and counsel's

available resources for pursuing the litigation.  See Fed. R. Civ. P. 23(g)(1)(A).  In addition, counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Here, counsel has shown it is fit to represent the class.  It identified the Regulation E claim, took steps to investigate it, and successfully negotiated a resolution of the parties' dispute.  Counsel also has ample experience litigating class actions in general, and particular expertise in overdraft fee class actions.  See doc. no. 40-2.  Further, based on the record, the court expects that counsel will continue to devote appropriate resources to notifying absent class members of the proposed settlement and to fulfilling the class's obligations under the Agreement, and that counsel will continue to represent the class fairly and adequately.  Accordingly, the court finds that plaintiffs' counsel of record may properly serve as class counsel in this matter under Rule 23(g).

D.    Preliminary Certification of the Proposed Class and Appointment of Class Representatives and Class Counsel

For the reasons discussed above, the court preliminarily certifies the proposed class for settlement purposes.  The court provisionally appoints plaintiffs Rita and Edwin Grenier as the settlement class representatives, and their chosen counsel, McCune and Shaheen & Gordon, P.A., as settlement class counsel in this matter.  In the event the court ultimately denies final approval of the parties' proposed settlement agreement, the court's preliminary certification of the class and provisional appointments of class counsel and class representatives shall be vacated.  See Rapuano, 334 F.R.D. at 643.

II.     Approval of Settlement Proposal: Rule 23(e)(2)

In addition to finding that it will likely be able to certify the proposed class, the court must also determine that it will likely be able to find that the class action settlement is "fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2); see also Rapuano, 334 F.R.D. at 654; City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996).  To make this assessment, the court should consider the adequacy of representation and of the relief offered under the proposal, whether "the proposal was negotiated at arm's length," and whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).

The court's role in the settlement approval process is to serve as a fiduciary for the absent class members, and to protect them from an unjust or unfair settlement.  See In re Lupron(R) Mktg. & Sales Pracs. Litig., 228 F.R.D. 75, 93 (D. Mass. 2005); see also Amchem, 521 U.S. at 623.  When "the parties negotiated at arm's length and conducted sufficient discovery," there is a presumption that a negotiated settlement is within the range of reasonableness.  Cohen v. Brown Univ., 16 F.4th 935 (1st Cir. 2021), cert. denied sub nom. Walsh v. Cohen, 212 L. Ed. 2d 618, 142 S. Ct. 2667 (2022) (quoting In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32-33 (1st Cir. 2009)).

As an initial matter, the court notes that the presumption of reasonableness applies here.  Counsel's sworn affidavit attests that settlement negotiations took place at arm's length.  Doc. no. 40-2 ¶ 5.  Counsel's position is further supported by the record, which indicates a months-long negotiation process.  The parties first informed the court that they had reached an agreement to settle the case "in

principle" on January 9, 2023.  Doc. no. 34.  They simultaneously asked the court to stay the upcoming deadlines in the case for 30 days while they finalized the agreement.  Doc. no. 35.  The parties subsequently request a 30-day extension of the stay so that they could continue negotiations.  Doc. no. 36.  On March 27, 2023, the parties informed the court that they had reached a settlement.  Doc. no. 37.

The parties also engaged in sufficient discovery.  Plaintiffs served document requests and interrogatories on Granite, and Granite provided written responses, including transactional data.  They each conducted depositions and plaintiffs' data expert completed an extensive analysis of the data provided by Granite.  Doc. no. 40-2, ¶ 5.  As a result, the plaintiffs possessed the facts necessary to understand the merits of their case.  See In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 261 (D.N.H. 2007).

Moreover, review of the parties' Agreement establishes that the court will likely be able to find that its terms are fair, adequate, and reasonable.  Under the proposed settlement, Granite will pay $635,000 into a "Settlement Fund." This amount represents approximately 40% of the possible damages plaintiffs could recover.  Though "[t]here is no predetermined figure indicating what constituted a reasonable percentage of probable trial damages," see Rubenstein, supra, § 13.15, the recovery here is within the range of other overdraft fee class action settlements.  See Lane v. Campus Fed. Credit Union, No. 16-CV-37-JWD-EWD, 2017 WL 3719976, at *8 (M.D. La. May 16, 2017) (preliminarily approving settlement in overdraft fee class action that represented 46% of total potential recovery); Behrens

v. Landmark Credit Union, No. 17-CV-101-JDP, 2018 WL 3130629, at *5 (W.D. Wis. June 26, 2018) (preliminarily approving settlement that represented 49.3% of total potential recovery in same circumstances). This is especially true since the settlement amount does not reflect the "prospective value of the change in [Granite's] overdraft fee assessment practice." Behrens, 2018 WL 3130629, at *5.

This amount is also reasonable in light of the potential risks and costs of additional litigation. Continued litigation would involve a motion to certify the class, a possible motion for summary judgment, and a possible trial. This litigation would come with risks, because if a jury (or the court at summary judgment) were to find that Granite's Opt-in Disclosure satisfied Regulation E, the plaintiffs would not recover any damages. Additionally, continued litigation would be costly.

Further, the Agreement treats class members equitably relative to each other. After attorneys' fees, litigation costs, and the service award to the class representatives are subtracted from the settlement fund, each settlement class member will receive a portion of the remaining funds based on the amount of overdraft fees they paid during the class period. Awards will be distributed either via direct deposit (for current Granite customers) or via check (for former Granite customers). Because awards will be distributed in proportion to the amount of fees each class member paid, the Agreement treats class members equitably.

Finally, the court finds that the release of liability in paragraph 67 of the Agreement that applies only to Granite's "conduct . . . during the Class Period that [was] or could have been alleged in the Action, relating to the assessment of

16

[overdraft fees] . . ." is not overly broad and therefore reasonable.  See Morgan v. United States Soccer Fed'n, No. 219CV01717RGKAGR, 2022 WL 16859651, at *3 (C.D. Cal. Aug. 11, 2022) ("A proposed settlement agreement is overly broad when it fails to limit the claims released to those based on the facts alleged in the complaint.").  The court notes that paragraph 69 of the Agreement contains another release which states that "Plaintiffs agree to a general release of the Released Parties from all claims . . . of every nature and description whatsoever . . . "  Doc. no. 40-3 at 23.  The court construes this release to be part of the release relating to the subject matter of this lawsuit in paragraph 67.  To the extent the parties intended to include a general release of all claims, that release is overly broad and not approved by the court.  See Morgan, 2022 WL 16859651, at *3.

Although the settlement proposal appears fair, adequate, and reasonable at this preliminary stage of approval proceedings, the parties should nonetheless be prepared to further explain and defend the proposed settlement at the fairness hearing.  In particular, the parties should be prepared to discuss how they reached the agreed settlement amount (i.e., how they weighed the potential recovery at trial against the plaintiffs' chances of success at trial to reach a reasonable settlement amount), details about counsel's lodestar analysis, and the specifics of the release of liability.

Still, because the proposed payments to class members constitute provision of substantial relief to the settlement class without requiring class members to incur the risks, burdens, costs, or delay associated with continued litigation, trial, and

possible appeal, the settlement proposal appears fair, adequate, and reasonable at this stage.  The court therefore preliminarily approves the parties' proposed settlement, pending final approval following a fairness hearing.

III.   Notice and Settlement Administration

Because the court has concluded that it will likely be able to certify the proposed class for the purposes of settlement and approve the proposed settlement, it must direct notice to all class members who would be bound by the Agreement.  See Fed. R. Civ. P. 23(e)(1)(B).  Under Rule 23(c), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The court has reviewed the "Notice Program" outlined in the Agreement.  In accordance with the Notice Program, within 60 days of the execution of the Agreement, Granite will produce a "Class List" containing the names and contact information of all settlement class members.  The parties' Agreement provides that certain administrative duties (including providing notice to class members, disbursement of payments to class members, and other such matters) will be performed by a "Settlement Administrator."[4]  The Settlement Administrator will send email notice to all class members who are current Granite customers and who agreed to receive email correspondence from Granite.  It will send postcard notice to

---

[4] The Agreement sometimes uses the term "Claims Administrator" instead of "Settlement Administrator."  The court will use the term "Settlement Administrator" as that term is explicitly defined in the Agreement.

customers who did not agree to email correspondence or who are no longer customers of Granite.  The court appoints KCC LLC, the claims administration business suggested by plaintiffs, as the Settlement Administrator, which will provide notice to the class and administer the settlement.[5]

The court finds that the form and substance of the notices proposed by the parties (doc. no. 40-3, ex. 1 & 2) will comply with Rule 23(c)(2)(B) after several corrections are made.  With respect to the Email and Postcard Notice (id., ex. 1), the notice informs class members that Granite unlawfully assessed certain "Relevant Fees," but it does not include the definition of that term.  The notice should specify the type of fees at issue in the suit.  Additionally, the notice states that Granite "has agreed to issue a credit to your Account, payment to you if you are no longer a member, and/or to return certain Relevant Fees."  Stating that Granite may return "certain Relevant Fees" could confuse class members because class members will only receive a pro rata portion of the net settlement fund.

The Long Form Notice is also deficient in several respects.  First, it refers to a single class representative when there are two class representatives.  Second, section one of the notice states that the "Class Representative has asserted a claim for breach of the Account agreement and violation of consumer protection laws."

---

[5] Plaintiffs report that they requested bids for claims administration services from "two very well-regarded claims administrators," and that KCC was the lower bidder.  Doc. no. 40-1 at 11.  Plaintiffs further report that "[t]he proposed manner of notice when used in other overdraft fee class action cases prosecuted by these same Class Counsel with KCC has never resulted in a notice reach of less than 90%, and usually has been well in excess of that."  Id.

The class representatives did not assert a claim for breach of the account agreement, only a claim for violating Regulation E.  Third, section four makes reference to "one or both of the Settlement Classes."  There is only one settlement class in this case.  Finally, the notice states that objections need only be sent to the Settlement Administrator.  This section must be updated to require that notice of objections be sent only to the clerk of the court.  The court finds redundant the Agreement's requirement that class members serve notice of objections on any party other than the clerk of the court, since counsel will automatically receive electronic notice of all objections sent to the clerk of the court once they are placed on the docket.  The court is concerned that the additional unnecessary service requirements will deter objectors.  As such, the court will accept and consider objections so long as they are sent to the clerk of court.  See Lloyd v. Navy Fed. Credit Union, No. 17-CV-1280-BAS-RBB, 2018 WL 5247367, at *10 (S.D. Cal. Oct. 22, 2018), order approved, No. 17-CV-1280-BAS-RBB, 2019 WL 2269958 (S.D. Cal. May 28, 2019) ("[T]he parties cannot limit the Court's discretion regarding the type of notice it finds must be provided to class members to satisfy constitutional due process concerns, including notice regarding the objection procedure class members will need to follow for the Court to consider their objections.").

The parties shall submit the proposed notices reflecting the changes no later than August 11, 2023.  The court will review the amended notices on an expedited basis.  Once the court approves them, the court will schedule the fairness hearing and other related deadlines.

IV.   Opting Out and Objecting

The Agreement affords settlement class members the opportunity to opt-out by sending written notice to the Settlement Administrator.  The Court approves and adopts the procedure and manner governing all requests to be excluded from the Class as outlined in the Agreement.  The Agreement also affords class members the opportunity to object by sending written notice to the Settlement Administrator, class counsel, defense counsel, and the clerk of the court.  As already noted, the court shall only require written notice of objections to be sent to the clerk of the court.  The court otherwise approves and adopts the manner for objecting to the proposed settlement outlined in the Agreement.

## CONCLUSION

For the foregoing reasons, the court grants plaintiffs' motion for preliminary approval of the proposed class action settlement (doc. no. 40) and finds it likely that the court will be able to certify the proposed class for the purposes of settlement. The court appoints KCC LLC to administer the settlement and provisionally appoints plaintiffs' counsel of record as settlement class counsel and plaintiffs as settlement class representatives.  Once the court approves the updated notices, the court will schedule the fairness hearing and other related deadlines.  The court approves the opt-out and objection procedures outlined by the parties, subject to the change noted above, and directs the parties to submit updated proposed notice

forms to bring them into conformity with Fed. R. Civ. P. 23(c)(2)(B) by **August 11, 2023.**

      SO ORDERED.

                                    _____

                                    Landya McCafferty
                                    United States District Judge

August 2, 2023

cc:    Counsel of Record